Philip A. Goldstein
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
pagoldstein@mcguirewoods.com
*Attorneys for Defendant Bank of America, N.A.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------------ x
:
SCOTT FEDERMAN, on behalf of himself and all : 
others similarly situated, : Case No. ___ Civ. ___ (__)(__)
:
Plaintiffs, :
: **NOTICE OF REMOVAL**
v. :
:
BANK OF AMERICA, N.A., : ELECTRONICALLY FILED
:
Defendant. :
:
------------------------------------------------------------------ x

**TO THE CLERK OF THE COURT:**

PLEASE TAKE NOTICE that Defendant Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of New Jersey, Mercer County (the "State Court") to this United States District Court for the District of New Jersey on the grounds that, *inter alia,* this Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1442(a), 1453, 1331 and all other applicable bases for removal.  In support of its Notice of Removal, Bank of America avers as follows:

1. On December 13, 2013, Plaintiff Scott Federman filed a Complaint in this action in the Superior Court of New Jersey, Mercer County, Docket No. L-2704-13.  A copy of the Complaint is attached hereto as Exhibit A.

2. Bank of America accepted service of the Summons and Complaint on December 23, 2013, and this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).  *See* 28 U.S.C. § 1446(b).  *See* Exhibits A (Complaint) and B (Summons dated December 23, 2013).

3. Pursuant to 28 U.S.C. § 1446(a), Bank of America has attached to this Notice of Removal all pleadings filed of record in the state court proceedings which it has received.  *See* Exhibits A, B & C.

4. In accordance with 28 U.S.C. § 1446(d), Bank of America will promptly give notice of removal to all adverse parties and will file a copy of this Notice with the Clerk of the State Court.  A copy of the Notice of Filing of the Notice of Removal is attached as Exhibit D.

5. The instant action may be removed to this Court by Bank of America pursuant to the provisions of 28 U.S.C. §§ 1332(d), 1441(b), 1442(a), 1453 and CAFA, and all other applicable bases for removal.

6. Plaintiff generally seeks to represent a class of hourly employees defined in various ways in his Complaint.  For example, in paragraph 1 of his Complaint he seeks to represent "a class of all hourly contract employees who are or were workers at the information technology facilities of Bank of America, N.A."  *See* Exhibit A (Complaint, ¶ 1).  In paragraph 12 of his Complaint, however, he defines the putative class that he seeks to represent as a nationwide class consisting of "[a]ll hourly employees who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the six years prior to the filing of this claim through the date of final judgment herein."  *Id.* (Complaint, ¶ 12).  In paragraph 13, plaintiff seeks to represent a subclass of hourly employees in the State of New Jersey. *Id.* (Complaint, ¶ 13).

7.	Plaintiff purports to bring this action pursuant to Rule 4:32 of the New Jersey Court Rules as a class/representative action, and seeks class certification on behalf of a class of "[a]ll hourly employees of Bank of America who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning six years prior to the filing of this claim through the date of final judgment herein."  *See* Exhibit A (Complaint, ¶ 12).  Plaintiff further purports to bring this action under the New Jersey Wage and Hour Law ("NJWHL") on behalf of a subclass of "[a]ll hourly employees of Bank of America in New Jersey who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning two years prior to the filing of this claim through the date of final judgment herein."  *Id.* (Complaint, ¶ 13).  Plaintiff asserts that his claims are typical of those of the putative class and subclass members he seeks to represent.  *Id.*, (Complaint, ¶ 16).

8.	Plaintiff alleges that he has been employed by Mitchell Martin since May 2013, *see* Exhibit A (Complaint, ¶ 1); was assigned as a contractor to a Bank of America facility in New Jersey, *id.* at ¶ 9; and that Bank of America "is a statutory co-employer." *Id.* at ¶ 2.  He asserts claims for (1) breach of contract on behalf of all class and subclass members; (2) alleged unpaid wages under the New Jersey Wage and Hour law, N.J.S.A. §§ 34:11-56a *et seq.,* on behalf of New Jersey subclass members; and (3) unjust enrichment on behalf of all class and subclass members.  *See* Exhibit A (Complaint, ¶¶ 29-41).

I.	**THIS COURT HAS JURISDICTION UNDER CAFA**

9.	Under CAFA, this Court has jurisdiction over class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant (*i.e.*, "minimal diversity"), the putative class exceeds 100 people, and where

the aggregate amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

### A. There is Minimal Diversity of Citizenship

10. Minimal diversity is present under CAFA if any member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A).

11. Plaintiff alleges that he is a resident and citizen of the State of Pennsylvania. *See* Exhibit A (Complaint, ¶ 9).

12. Plaintiff alleges that "Bank of America is a national banking association *located* in North Carolina." *See* Exhibit A (Complaint, ¶ 10) (emphasis added). 28 U.S.C. § 1348 governs the citizenship of national banking associations for diversity purposes, and provides, in relevant part, that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the states in which they are respectively *located*." 28 U.S.C. § 1348 (emphasis added). *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 317-18 (2006).

13. Plaintiff purports to be a member of the putative class and is a citizen of a state different from Bank of America.

14. Therefore, the diversity of citizenship between plaintiff (Pennsylvania) and Bank of America (North Carolina) is sufficient to establish diversity for purposes of the removal of this action under CAFA.

### B. The Putative Class Includes More Than 100 Members

15. CAFA requires that the proposed class consist of at least 100 members. *See* 28 U.S.C. § 1332(d)(5).

16. Here, plaintiff alleges that "Bank of America is a statutory co-employer" of the contractors assigned to its facilities, *see* Exhibit A (Complaint, ¶2), and he seeks to represent a class of hourly employees defined in various ways in his Complaint. For example, in paragraph 1 of his Complaint he seeks to represent "a class of all hourly contract employees who are or were workers at the information technology facilities of Bank of America, N.A." *See* Exhibit A (Complaint, ¶ 1). However, he also defines the putative class that he seeks to represent as a nationwide class consisting of "[a]ll hourly employees of Bank of America who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning six years prior to the filing of this claim through the date of final judgment herein," and the putative subclass as "[a]ll hourly employees of Bank of America in New Jersey who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning two years prior to the filing of this claim through the date of final judgment herein." *See* Exhibit A (Complaint, ¶ 13).

17. Plaintiff alleges that Bank of America hired Adecco to staff its contract needs throughout the United States. Plaintiff alleges that Bank of America contracted with various companies "such as Adecco, Infosys, Tata Consultancy Services, Mitchell Martin, Inc. ("MMI"), and others" to recruit IT professionals to perform certain tasks for the Bank. *See* Exhibit A (Complaint, ¶ 1).

18. Plaintiff alleges that there are "over 40 persons who are members of the Class, and the members of the Class are geographically dispersed throughout the United States." *See* Exhibit A (Complaint, ¶ 14). Plaintiff further alleges that there are "over 40 persons who are members of the Subclass." *Id.* According to plaintiff, the putative class is so numerous that "joinder of all members of the Class or Subclass would be impracticable." *Id.*

19. The putative class, as expressly defined by plaintiff, potentially includes every individual who performed any type of contract work for Bank of America, anywhere in the United States, over the past six years. *Id.* (Complaint, ¶¶ 1, 12, 13)

20. For the time period January 1, 2008, through December 31, 2013, 111,712 contractors performed services for Bank of America in the United States. During that same time period, 14,428 of those contractors were data consultants, developers, IT professionals, IT project managers, network contractors, programmers, systems administrators, systems analysts and technical support contractors. *See* Declaration of Jennifer Torres ("Torres Decl."), ¶¶ 3 & 4, appended as Exhibit E.

21. Therefore, the putative class consists of more than 100 members.

C. **The Amount in Controversy Exceeds $5,000,000 in the Aggregate**

22. The third CAFA requirement is that the amount in controversy "exceeds the sum or value of $5,000,000, exclusive of interest or costs." 28 U.S.C. § 1332(d)(2). CAFA provides that the "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

23. The Third Circuit has noted that in removal cases, "determining the amount in controversy begins with a reading of the complaint filed in the state court." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007). The Court may also consider information contained in the notice of removal when deciding whether the amount in controversy requirement has been satisfied. *Id*.

24. Plaintiff alleges that the "work assigned and required demanded that Plaintiff and other Class members work on weekends, late evenings and very early mornings." *See* Exhibit A

6

(Complaint, ¶ 6). He contends that "all or virtually all of the workers were regularly required to work more than 40 hours per week." *Id.* (Complaint, ¶ 1).

25. Thus, for the purpose of calculating the amount in controversy for the sole and limited purpose of determining CAFA jurisdiction, Bank of America has utilized the following conservative calculation for the six-year time period defined by plaintiff.[1]

26. For the time period January 1, 2008, through December 31, 2013, 111,712 contractors performed services for Bank of America in the United States. *See* Exhibit E (Torres Decl., ¶3). During that same time period, each contractor worked an average of 28.38 weeks at an average rate of pay of $25.15 per hour. *Id.* Thus, if each contractor worked just one hour per week for which he or she was not paid as alleged by plaintiff, the alleged damages would be $79,735,220. Described alternatively, if each of the 111,712 contractors received an additional payment of $44.76 for allegedly uncompensated work – that is, less than 2 hours of total pay at the average hourly rate for the allegedly uncompensated work during the entire six-year period from January 1, 2008 through December 31, 2013 – the alleged damages would exceed CAFA's $5,000,000 threshold.

27. For the time period January 1, 2008, through December 31, 2013, 14,428 of the contractors were data consultants, developers, IT professionals, IT project managers, network contractors, programmers, systems administrators, systems analysts and technical support contractors. *See* Exhibit E (Torres Decl., ¶4). Each of those contractors worked an average of 51.61 weeks at an average rate of pay of $38.04 per hour. *Id.* Thus, if each contractor worked just one hour per week for which he or she was not paid as alleged by Plaintiff, the alleged

---

[1] These calculations and those found in Section II, *infra,* are based solely on plaintiff's theory of liability alleged in his Complaint. Bank of America denies and disputes that any such liability exists or that plaintiff is entitled to any of the relief, individual or class, he seeks, including attorneys' fees and costs.

damages would be $28,325,690.  Described alternatively, if each of these 14,428 contractors received an additional $346.55 for allegedly uncompensated work – that is, less than 10 hours of total pay at the average hourly rate for allegedly uncompensated work during the entire six-year period from January 1, 2008 through December 31, 2013 – the alleged damages would exceed CAFA's $5,000,000 threshold.

28. Plaintiff also seeks attorneys' fees in connection with each of the claims asserted in his Complaint.  *See* Exhibit A (Complaint, ¶ 36 & p. 13 at ¶ B), which are considered for purposes of determining the amount in controversy under CAFA.  *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("Moreover, in calculating the amount in controversy, we must consider potential attorneys' fees.").  In the Third Circuit, "most fees appear to fall in the range of nineteen to forty-five percent." *In re Ikon Office Solutions, Inc. Securities Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  *See also Martin v. Foster Wheeler Energy Corp.*, 2008 U.S. Dist. LEXIS 25712 (M.D. Pa. 2008) (noting that "district courts have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses…"); *In re Corel Corp. Sec. Litig.*, 293 F. Supp.2d 484, 495-98 (E.D. Pa. 2003) (approving attorneys' fees of one-third of the settlement fund); *In re: GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *43 (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent").

29. Applying this benchmark to Bank of America's calculations of the potential amounts in controversy above, the potential amount in controversy related to plaintiff's claim for attorneys' fees equals $26,551,828 and $9,442,455, respectively. *See supra* at ¶¶ 26 & 27.

30. Accordingly, the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest. *See Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.").

31. Thus, this Court has jurisdiction over this action under CAFA. *See* 28 U.S.C. § 1332(d).

## II. THIS COURT HAS TRADITIONAL DIVERSITY JURISDICTION

32. Traditional diversity jurisdiction also exists pursuant to 28 U.S.C. § 1332(a) because: (1) there is complete diversity of citizenship between plaintiff and Bank of America, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

33. As established above, there is complete diversity of citizenship between plaintiff, who is a resident and citizen of Pennsylvania, and Bank of America, which is a national banking association located in North Carolina. *See* Exhibit A (Complaint, ¶¶ 9-10); *see also* 28 U.S.C. § 1348; *Wachovia Bank*, 546 U.S. at 317-18.

34. With regard to the amount in controversy, plaintiff alleges that "[s]ince at least June 15, 2013, Defendant Bank of America has failed to pay [him] for all the hours he has worked per week," *see* Exhibit A (Complaint, ¶ 9), at a rate of $60 per hour. *Id.* at ¶ 5. Pursuant to his New Jersey state-law claim alone, he demands his alleged unpaid time and liquidated damages. *Id.* at ¶¶ 33-37. In calculating the amount in controversy, potential attorneys' fees also must be considered. *See Suber*, 104 F.3d at 585. Although Bank of America disputes that

Plaintiff is entitled to any attorneys' fees, such fees are authorized under the NJWHL. *See, e.g.,* N.J. Stat. § 34:11-56a25 & 34:11-56.8.

35. Plaintiff contends that his rate of pay was $60 per hour and that "[s]ince at least June 15, 2013, Defendant Bank of America has failed to pay Federman for all the hours he has worked per week despite his repeated requests for such pay." *See* Exhibit A (Complaint, ¶¶ 5 & 9). If plaintiff worked an additional 10 hours per week for the 28-week period between June 15, 2013 and the end of the calendar year, his alleged back pay would equal $16,800, and the liquidated damages he demands would equal an additional $16,800, for a total of $33,600.

36. If he litigates his state-law claim to verdict, it is reasonable to assume that plaintiff will seek fees in excess of $41,400, thus satisfying the $75,000 minimum threshold. *See Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *3 (S.D.N.Y. 2012) (awarding $138,750 in attorney's fees in a single-plaintiff FLSA/New York Labor Law case); *Wong v. Hunda Glass Corp.*, 2010 WL 3452417, at *4 (S.D.N.Y. 2010) (awarding $100,100 in attorneys' fees in a single-plaintiff FLSA/New York Labor Law case); *Zhao Hui Chen v. Jin Holding Grp. Inc.*, 2012 WL 279719, at *5 (S.D.N.Y. 2012) (awarding $66,080 in attorneys' fees in a single-plaintiff FLSA case).

37. Therefore, plaintiff's individual claims for alleged unpaid time, liquidated damages and attorneys' fees exceed $75,000, exclusive of interest and costs.

38. Therefore, plaintiff's amount in controversy exceeds the threshold $75,000. *See* 28 U.S.C. § 1332(a).

### III. THIS COURT HAS FEDERAL QUESTION JURISDICTION

39. As an alternative grounds for removal, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action is one which may be removed to this Court by

Bank of America because this case "arises under" the National Bank Act of 1864, 12 U.S.C. §12 et seq. ("NBA").

40. Federal courts have subject matter jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 784 (3d Cir. 1995). The presence or absence of federal question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction only exists when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64. For the purposes of removal, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

41. The National Bank Act of 1864 ("NBA"), 12 U.S.C. § 21 et seq., was enacted "'to facilitate…a national banking system'" and "prevent inconsistent or intrusive state regulation from impairing the national system." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 311 (2d Cir. 2005), *quoting Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 308 (1978). A national bank "is an 'instrumentalit[y] of the federal government, created for a public purpose, and as such is necessarily subject to the paramount authority of the United States." *Marquette,* 439 U.S. at 308; *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008). Accordingly, "the States can exercise no control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit."

11

*Farmers' & Mechanics' National Bank v. Dearing*, 91 U.S. 29, 34 (1875); *Pac. Capital Bank, N.A.*, 542 F.3d at 351.

42. Subsequent to enacting the NBA, Congress delegated the supervision of national banks and the implementation of the NBA to the Office of the Comptroller of the Currency (the "OCC"). *See* 12 U.S.C. § 93a. The OCC's authority includes "prescrib[ing] rules and regulations to carry out the responsibilities of the office." *Id.* This regulatory authority includes interpretation of state law preemption under the NBA, and carries the same weight and preemptive effect as federal statutes. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982); *Burke*, 414 F.3d at 314. Pursuant to its Congressionally-delegated authority, the OCC has provided national banks with the plenary power to, *inter alia*, "adopt compensation plans" for their officers and employees. 12 C.F.R. § 7.2011.

43. In short, the NBA and the OCC's regulations "shield[] national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). State laws "may not curtail or hinder a national bank's efficient exercise of any . . . power, incidental or enumerated under the NBA." *Id.* at 13. Incidental powers "include activities closely related to banking and useful in carrying out the business of banking." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 562 (9th Cir. 2002), *citing First Nat'l Bank v. Taylor*, 907 F.2d 775, 778 (8th Cir. 1990); *accord American Land Title Ass'n v. Clarke,* 968 F.2d 150, 157 (2d Cir. N.Y. 1992).

44. In accordance with these principles, and to accomplish the full purposes and objectives of Congress in enacting the NBA, courts routinely have held that state laws are preempted by the NBA if they "'hamper[] the federally permitted activity of a national bank'" or "curtail or hinder a national bank's efficient exercise" of any power promulgated by the NBA.

*SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 190-92 (2d Cir. 2007), *quoting Watters*, 550 U.S. at 18. Indeed, the preemptive effect of the NBA is so great that, although there is normally a presumption against the preemption of state laws, in the context of national banks and the NBA, the Supreme Court has "interpreted grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather *ordinarily pre-empting, contrary state law*." *Watters*, 550 U.S. at 12 (emph. added) (int. quot. omitted); *Burke*, 414 F.3d at 314; *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005); *City and County of San Francisco*, 309 F.3d at 558-559. If a state statute interferes with a power that national banks are authorized to exercise, the state statute presents an "irreconcilable" conflict with federal law and is therefore preempted under principles of conflict preemption. *See Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 26 (1996).

45. Here, plaintiff alleges that he is an employee of Bank of America. Accordingly, to the extent he seeks to impose any state law obligations (*i.e.*, the New Jersey Wage and Hour law) on Bank of America's compensation practices, or seeks any recovery beyond that which might be provided for or available under federal law, they are preempted.

46. In this case, plaintiff alleges that he is an employee of Bank of America and that the New Jersey Wage and Hour law imposes a state-specific obligation on its pay practices vis-à-vis his work on behalf of the Bank. *See* Exhibit A (Complaint, ¶¶ 33-37). Accordingly, the New Jersey Wage and Hour law is completely preempted by the NBA because it obstructs, impairs, and/or conditions Bank of America's ability to fully exercise its powers to conduct activities authorized under federal law, and otherwise "frustrates the purposes of the [National Bank Act], [and] impairs the efficiencies of [the Bank] to discharge [its] duties." *Nat'l State Bank v. Long*, 630 F.2d 981, 985-86 (3d Cir. 1980) (quotation omitted).

47. This Court has supplemental jurisdiction over all other claims asserted by Plaintiff pursuant to 28 U.S.C. §1367(a) and 28 U.S.C. §1441(c).

**IV.   THIS COURT HAS REMOVAL JURISDICTION UNDER 28 U.S.C. §1442(a)**

48. This Court also has removal jurisdiction over this action pursuant to 28 U.S.C. §1442(a) because the Bank, as a national bank, is an instrumentality or agent of the United States under the NBA. *See Wells Fargo Bank, N.A. v. Boutris*, 252 F. Supp.2d 1065, 1073 (E.D. Cal. 2003); *Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 308 (1978) (quoting *Davis v. Elmira Savings Bank*, 161 U.S. 275, 283 (1896)) (A national bank "is an 'instrumentalit[y] of the federal government, created for a public purpose, and as such is necessarily subject to the paramount authority of the United States.'").

49. Under 28 U.S.C. §1442(a), federal officers and their agents may remove cases based on acts performed under color of their federal office if they assert a colorable defense. *See Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1251 (9th Cir. 2006). As a general policy, courts construe §1442 broadly in favor of removal. *Id.* at 1252-53 (observing that legislative history "was a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal").

50. A defendant removing on this basis must demonstrate: (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions … and plaintiff's claims; and (c) it can assert a colorable federal defense. *Id.* Notably, articulating a colorable defense, even if it is not eventually successful, is sufficient for removal jurisdiction. *See Kinetic Systems, Inc. v. Federal Financing Bank,* 895 F. Supp.2d 983, 991-94 (N.D. Cal. 2012) (court found it had removal jurisdiction based on defendant's colorable defense of conflict preemption

and sovereign immunity, even though it then denied defendant's motion to dismiss based on those same defenses). *See also Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075, 144 L. Ed. 2d 408 (1999) (holding that an agency/officer is not required to "win his case before he can have it removed").

51. Bank of America is a "person" within the meaning of the statute because national banks are federal corporations. *See* 12 U.S.C. §24; *Kinetic,* 895 F. Supp.2d at 991 (noting that nothing in 28 U.S.C. §1442 indicates intent to overcome presumption that "person" includes federal corporations).

52. As noted above*,* as a national bank*,* Bank of America was given the power to conduct "any activity that is part of, or incidental to, the business of banking." In the course of conducting the business of banking, plaintiff alleges that Bank of America violated the New Jersey Wage and Hour law. *See* Exhibit A (Complaint, ¶¶ 33-37). Accordingly, there is a causal "nexus" between Bank of America's alleged acts and plaintiff's claims.

53. Bank of America also has a colorable federal defense, inasmuch as plaintiff's claim that it violated the New Jersey Wage and Hour law is preempted by the NBA. *See Green v. Bank of America, N.A.*, 2013 U.S. Dist. Lexis 76221 (C.D. Cal. 2013)

54. Because Bank of America is a person as contemplated by § 1442(a), a causal nexus exists between plaintiff's claim and Bank of America's alleged conduct, and Bank of America has a colorable defense to plaintiff's claims based upon NBA preemption, this court has jurisdiction of this action under § 1442(a). *See Kinetic*, 895 F. Supp.2d at 991-994.

V. **VENUE IS PROPER IN THIS COURT**

55. Venue lies in this Court because plaintiff's action was originally filed and is pending in this district. *See* 28 U.S.C. § 1441(a).

15

56. By filing this Notice of Removal, Bank of America does not waive any defenses, either procedural or substantive, which may be available to it, including, but not limited to, its right to contest *in personam* jurisdiction, improper service of process or the absence of venue in this Court or in the court from which the action has been removed.

57. Nothing in this Notice is intended or should be construed as any type of express or implied admission by Bank of America of any fact, of the validity or merits of any of plaintiff's claims and allegations, or of any liability for the same, each and all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Bank of America's rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

## VI. CONCLUSION

WHEREFORE, Bank of America respectfully removes the above-captioned action from the Superior Court of New Jersey, Mercer County, to the United States District Court for the District of New Jersey.

Respectfully submitted,

Dated: January 22, 2014　　　　　　　　McGuireWoods LLP
　　　　New York, New York

By: _____/s/ Philip A. Goldstein_____
Philip A. Goldstein
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
pagoldstein@mcguirewoods.com

*Attorneys for Defendant Bank of America, N.A.*

53717336_6