**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
bgreenberg@litedepalma.com

*Attorneys for Plaintiffs*
[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SCOTT FEDERMAN and JAMES LEONE, on behalf of themselves and all others similarly situated, | : : : : : | Civil Action No. 14-00441 (MAS)(TJB) |
| *Plaintiffs*, | : : : | |
| v. | : : : | **SECOND AMENDED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT** |
| BANK OF AMERICA, NA, and BANK OF AMERICA CORP., | : : : : | |
| *Defendants*. | : : : | **JURY TRIAL DEMANDED** |

Plaintiffs Scott Federman and James Leone, by their attorneys, bring this amended class and collective action against Defendants Bank of America, NA, and Bank of America Corp., on their own behalf and on behalf of all others similarly situated, and allege as follows:

**NATURE OF THE ACTION**

1.       This is a wage and hour class and collective action against Defendants, seeking relief on behalf of a class, defined below, of employees who are or were workers at the information technology facilities of Bank of America, NA and/or Bank of America Corp. (together, "Bank of America" or "Defendants").  For at least the past six years, Defendants have engaged in a common scheme, plan, and conspiracy to deprive hourly employees of due and payable hourly wages.  Defendants did this by implementing a third-party recruitment and

contract scheme in which employment recruiters for information technology ("IT") personnel, such as Adecco, TEKsystems, Inc., Pontoon Solutions, Inc. ("Pontoon"), Mitchell Martin, Inc. ("MMI"), and others, recruited and placed IT workers at various Bank of America IT facilities, including the facilities at Pennington, New Jersey, to perform work for Bank of America, but refused to pay those workers for work over 40 hours per week, despite the fact that all or virtually all of the workers were regularly required to work many more than 40 hours per week. As detailed below, Plaintiffs and all of the Class members were hourly, non-salaried employees who were paid only for 40 hours of work per week despite the fact that they regularly worked many more than 40 hours per week. The computer log-in, time slips, and other security records of Defendants show and will show the amount of time Plaintiffs and all other Class members worked for Defendants for which they were not paid.

2.      As part of this common scheme, plan and conspiracy, several of the IT recruiters had or have "employee service agreements" ("ESA") with the workers. As a result, Defendants are a statutory joint- or co-employer of the workers and are responsible for failing to pay the Class members for all hours worked, having received and appreciated the benefits of their unpaid labor. Plaintiff Federman's ESA with MMI provided that disputes concerning his wages, among other things, would be resolved by arbitration. That arbitration clause expressly contemplates representative and collective actions: "The arbitrator shall render a written award that contains the essential findings and conclusions on which the decision is based and ***such decision shall be final and binding upon the parties and all persons claiming under and through them***." (Emphasis added).

3.      In accordance with the ESA, Plaintiff Federman filed a demand for arbitration with the American Arbitration Association naming both MMI and Bank of America. In

response, Bank of America denied that it had any arbitration agreement with Plaintiff Federman

of other class members, so that the claim could not proceed in arbitration against Bank of

America.

4.      Because Bank of America is a statutory joint- or co-employer, and because Bank

of America has denied that it has any arbitration agreement with Plaintiffs and other Class

members relating to their pay for earned wages, Plaintiffs have instituted this class suit in court

to obtain full relief on behalf of themselves and the similarly situated hourly IT workers.

5.      With respect to Plaintiff Federman, the ESA's Term Schedule expressly set forth

a non-salaried, hourly rate of employment:  "**RATE: $60.00 PER HOUR (W2)"** and promised

that "Employee will be paid for hours worked and approved by Client/Client Manager."

6.      With respect to Plaintiff Leone, the contractual non-salaried rate of pay was

$55.28 per hour.

7.      Notwithstanding these terms, Plaintiffs regularly worked more than 40 hours per

week at the client, "Bank of America (ADECCO)," but were only paid for 40 hours per week,

despite repeated requests for compensation for all hours worked.  Plaintiffs and other Class

members were told that Bank of America would approve payment for only 40 hours per week

even though the work assigned and required demanded that Plaintiffs and other Class members

work on weekends, late evenings and very early mornings to coordinate with other offices in

India and elsewhere.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the

action arises under a federal statute, 29 U.S.C. § 201 *et seq.*

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because it

3

is where the cause of action arose and where Defendants have maintained a principal business address or have otherwise conducted business.

## PARTIES

9.    Plaintiff Scott Federman is a citizen of Pennsylvania who resides at 6332 Musket Court, Bensalem, PA 19020.  He has been employed by MMI and Defendant "Bank of America (ADECCO)" since May 2013 at Bank of America's technical service facilities located at 1100 Merrill Lynch Drive, Pennington, NJ.  Since at least June 15, 2013, Bank of America has failed to pay Federman for all the hours he has worked per week despite his repeated requests for such pay.  A Consent to Act signed by Plaintiff Federman was attached to the initial complaint and is attached hereto, as Exhibit A.

10.    Plaintiff James Leone is a citizen of New Jersey who resides at 299 Bertha Road, Toms River, NJ  08755.  He was employed by TEKsystems and Defendant Bank of America from approximately May 2013 to April 2014 at Bank of America's technical service facilities located at located at 1100 Merrill Lynch Drive, Pennington, NJ.  Bank of America failed to pay Leone for all the hours he has worked per week despite his repeated requests for such pay.  A Consent to Act signed by Plaintiff Leone is attached hereto, as Exhibit B.

11.    Defendant Bank of America, NA is a national banking association located in North Carolina but having executive offices in New York, NY, Pennington, NJ, and Charlotte, NC.  Defendant Bank of America Corp. is a publicly-traded Delaware corporation that is a bank holding company, headquartered in Charlotte, NC, that has both bank and non-bank operating subsidiaries, including Bank of America, NA and Merrill Lynch & Co.  On information and belief, recruiters and Bank of America have a contractual relationship, as they provide technical staffing through a Master Servicer, Pontoon Solutions (f/k/a Adecco) to Bank of America, and

4

Bank of America pays for such workers through the Master Servicer, which in turn pays the originating recruiters/suppliers such as TEKsystems and MMI.  On information and belief, IT professionals working for Bank of America provide back-office services and work for both the non-bank and bank subsidiaries of Bank of America Corp., particularly at the Pennington, NJ facility, which once was the back-office facility of Merrill Lynch & Co.  Bank of America and MMI employed Federman since on or about May 20, 2013 as an hourly employee but failed to pay him for all hours worked. Bank of America and TEKsystems employed Leone since on or about May 2013 but failed to pay him for all hours worked.  Bank of America suffered and permitted Plaintiffs Federman and Leone and other Class and Subclass members to perform work for Bank of America for which they have not been paid.  Bank of America has been aware of and appreciated the benefits of this work, and it would otherwise be unjust for Federman, Leone and other Class members not to be paid for such work.  On information and belief, Bank of America has gross sales of over $500,000 a year and uses goods produced in interstate commerce.

12.    At all times relevant to this action, Plaintiffs, the Class and the Subclass (as defined herein) were "employees" covered by the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("NJWHL"), and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  At all relevant times, Defendants were an "employer" of Plaintiffs, the Class and the Subclass of hourly workers Plaintiffs seek to represent, as those terms are defined by NJWHL, N.J.S.A. 34:11-56a1(g) and (h), and applicable regulations of the New Jersey Department of Labor and Workplace Development contained in the New Jersey Administrative Code ("N.J.A.C."), N.J.A.C. 12-56-6 et seq.  Defendants are jointly and severally liable for the violations alleged herein.

5

## STATEMENT OF FACTS

11.     The Bank of America corporate center in Pennington, New Jersey houses scores of technical support, development, back-office and operation resources for a multitude of Bank of America operations and subsidiaries throughout the country.  On information and belief, Defendants employ, directly and indirectly, hundreds of hourly technical support, technology and applications personnel at the Pennington corporate center and elsewhere.  On information and belief, many of these personnel, including Plaintiffs, had employment service agreements with technology recruiters and contractors, such as MMI and TEKsystems, who have placed such personnel with Defendants.

12.     Beginning in May 2013, Plaintiff Federman was recruited by and contracted with MMI to work as a "Technical Delivery Manager" at the Bank of America corporate center in Pennington, New Jersey.  Plaintiff Federman, like the Class and Subclass members, was not a salaried employee.  Instead, MMI's Term Schedule provided that Plaintiff was an hourly employee at the "**RATE: $60.00 PER HOUR (W2)**."  The Term Schedule further provided that "Employee will be paid for hours worked and approved by Client/Client Manager."

13.     Beginning in May 2013, Plaintiff Leone was recruited by and contracted with TEKsystems to work as a "Technical Delivery Manager" at the Bank of America corporate center in Pennington, New Jersey.  Plaintiff Leone, like the Class and Subclass members, was not a salaried employee.  Instead, Plaintiff was an hourly employee at the rate of "$55.28." Plaintiff Leone was to be paid for all hours worked as required and approved by Defendants' hiring manager.

14.     Shortly after the start of their employment and continuing thereafter, Plaintiffs worked at Bank of America each week for more than 40 hours per week.  Such work hours were

6

required by the projects, systems, applications and installations Plaintiffs and Class and Subclass members had been assigned and directed to complete by Defendants.  Indeed, many of the assignments required coordination with other Bank of America technical personnel located in India and elsewhere, meaning that weekend, holiday, evening and early morning hours were necessary to perform the tasks.

15.    Upon performing this work, Plaintiffs submitted timesheets and requests for payments reflecting all of the hours they had worked.  Despite such submissions and requests for payment, Defendants advised Plaintiffs that they would not be paid for any hours over 40 hours per week.  On information and belief, Defendants continued to advise Plaintiffs and Class and Subclass members that they would be paid for only 40 hours per week despite their consistent and regular work of beyond 40 hours per week.

16.    The hours worked by Plaintiffs and other Class and Subclass members beyond 40 hours per week are reflected in the electronic log-in and security records of Defendants Bank of America.  In addition, Plaintiff Federman recorded on his timesheet for recruiter MMI "rollback" hours reflecting those hours of work Plaintiff Federman performed were beyond 40 hours per week.

17.    By email, Plaintiff Leone advised his contact at TEKsystems as follows with respect to Defendants' hiring manager, "Alex":  "My time-sheet just came back as rejected.  I asked Alex what happened and he said that I cannot put more than 40 hrs. on my sheet.  I [sic] wanted me to adjust and re-submit.  I told him I worked 56 hours and he said that was fine, but that I couldn't put anything more than 40 in. 8hrs each day max. That it's understood and no one can out more in.  he [sic] also said it could cause issues for him. So he would try to 'comp' me time here and there when I put extra hours in.  I thought being hourly that wasn't allowed ???

[sic] I thought that was only ok with salaried employees?"  The TEKsystems contact emailed back the following:  "Unfortunately, that's how management is at Merrill.  Work with him and I'm certain he will give you comp. hours."  A series of emails, including the foregoing email, between Plaintiff Leone and his contact at TEKsystems, are attached as Exhibit C, hereto.

18.     Regardless of whether Plaintiffs and other Class and Subclass members were or are entitled to an overtime premium for their work hours beyond 40 hours per week (due to any alleged status as a "computer professional"), they were and are entitled to, at a minimum, their standard hourly pay for all hours worked, as neither Plaintiffs nor the Class or Subclass members were or are salaried employees.

19.     Defendants have attempted improperly to use the third party agreements between the technology recruiters and Bank of America to deny Plaintiffs and other Class and Subclass members pay for all hours worked.  In denying such pay, Defendants have breached the employment agreements and terms and violated the NJWHL and the FLSA.  The NJWHL and the FLSA expressly prohibit the waiver of employee rights to pay for all hours worked.

20.     At all times relevant, Defendants are and were required to establish, maintain and preserve for six years, true and accurate records of the hours worked by each employee. N.J.S.A. 34:11-56a20, N.J.A.C. 12:56-4.4.

21.     Upon information and belief, Defendants failed to establish, maintain, and preserve all such required records for Plaintiffs and the Class and Subclass including but not limited to the total hours worked each day and each workweek by Plaintiffs and each member of the Class and Subclass and their start and stop times.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs bring all claims other than those under the federal Fair Labor Standards

Act as class claims, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on his behalf and on behalf of all other members of the Class ("Class"), defined as:

> All hourly employees of Bank of America who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning six years prior to the filing of this claim through the date of final judgment herein.

23.     Plaintiffs also bring this action under the NJWHL on behalf of a subclass ("Subclass") that is defined as:

> All hourly employees of Bank of America in New Jersey who have worked more than 40 hours in a week but who have not been paid for work over 40 hours per week during the period beginning two years prior to the filing of this claim through the date of final judgment herein.

24.     There are over 40 persons who are members of the Class, and the members of the Class are geographically dispersed throughout the United States.  Similarly, there are over 40 persons who are members of the Subclass.  Therefore, individual joinder of all members of the Class or Subclass would be impracticable.

25.     Common questions of law or fact exist as to all members of the Class and Subclass.  These questions predominate over the questions affecting only individual class members.  These common legal or factual questions include:

> a.      Whether Defendants have engaged in a common scheme, plan and course of conduct to deprive hourly employees of due and payable hourly wages by implementing a third-party recruitment program that denied pay to Plaintiffs and Class and/or Subclass members

for all hours worked;

        b.     Whether Defendants have failed to pay Plaintiffs and Class and/or Subclass members for all hours worked;

        c.     Whether Defendants have breached the employment agreements and term schedules of Plaintiffs and Class and/or Subclass members;

        d.     Whether Defendants have been unjustly enriched by failing to pay Plaintiffs and Class and/or Subclass members for all hours worked;

        e.     Whether Class and/or Subclass members have suffered damage as a result of Defendants' conduct; and

        f.     The appropriate measure of damages.

25.     Plaintiffs' claims are typical of the claims of the Class and Subclass, in that Plaintiffs were employed by Defendants as hourly employees, in New Jersey, and were not paid for all hours worked.  Plaintiffs, therefore, are no different in any relevant respect from any other Class or Subclass member, and the relief sought is common to the Class and Subclass.

26.     Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class or Subclass members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation.  The interests of the Class and Subclass will be adequately protected by Plaintiffs and their counsel.

27.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class and Subclass member likely will be relatively small, especially given the burden and expense of individual prosecution of the complex proceedings necessitated by Defendants' conduct.  Thus, it would be

virtually impossible for the Class and Subclass members individually to effectively redress the wrongs done to them.  Moreover, even if the Class members themselves could afford individual proceedings, it would still not be preferable to class-wide proceedings.  Individualized cases present the potential for inconsistent or contradictory judgments.  By contrast, class-wide litigation presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a neutral tribunal.

28.     In the alternative, the Class and/or Subclass may be certified pursuant to Rule 23(c)(4), as the issue of whether Defendants have failed to pay hourly IT professionals for all hours worked is common and predominating for all members of the Class and Subclass, making a class-wide liability trial superior to all other methods of dispute resolution.

## <u>COUNT I</u>

### (Breach of Contract on behalf of all Class and Subclass Members)

29.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

30.     Defendants imposed a substantially uniform ESA and Term Sheet applicable to the work of Plaintiffs and Class and Subclass members.  The ESAs provided that Plaintiffs would be paid a specific rate per hour for "hours worked."  Despite this promise and agreement, Defendants have failed to pay Plaintiffs and Class and Subclass members their agreed-to hourly pay for all hours worked.

31.     In addition, Defendants have breached the implied duty of good faith and fair dealing by refusing to pay Plaintiffs and Class and Subclass members for all hours worked.

32.     Defendants have imposed an arbitrary and self-interested limit on the hours paid to Plaintiffs and Class and Subclass members that has no relation to the work actually performed

544606.1

and required by Plaintiffs and Class and Subclass members.  In addition, Defendants may not use the phrase "approved by Client/Client Manager," to waive employee rights to pay for all hours worked.

33.     Plaintiffs and the other members of the Class and Subclass are entitled to recover the full amount of wages owed and the damages caused by Defendants' above-described breach, in such amounts to be proved at trial.

## COUNT II

**(NJWHL - Unpaid Wages on behalf of New Jersey Subclass Members)**

34.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

35.     At all times relevant herein, Plaintiffs and the New Jersey Subclass members were employed by Defendants within the meaning of the NJWHL.

36.     Defendants willfully violated Plaintiffs' rights and the rights of the members of the Subclass, by failing to pay them for all hours worked at rates not less than their promised and regular rate of pay for each hour worked.

37.     As a result of Defendants' violations of the NJWHL, Plaintiffs and members of the Subclass have suffered damages by being denied pay for all of their hours worked in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs pursuant to the NJWHL.

## COUNT III

**(Unjust Enrichment on behalf of all Class and Subclass Members)**

37.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding

12

paragraphs.

38.     Under the common law doctrine of unjust enrichment, Defendants, by their

policies and actions, benefited and increased their profits and personal compensation by failing

to pay Plaintiffs and the Class and Subclass all wages due for work performed including but not

limited to hours worked in excess of 40 hours in a workweek at their regular hourly wage rate.

39.     Defendants accepted and received the benefits of the work performed by Plaintiffs

and the Class and Subclass at the expense of Plaintiffs and the Class and Subclass.  It is

inequitable and unjust for Defendants to reap the benefits of the labor of Plaintiffs, the Class and

the Subclass without paying all wages due, which includes but is not limited to unpaid overtime

and regular hours.

40.     Plaintiffs and the Class and Subclass are entitled to relief for this unjust

enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on

these amounts.

## COUNT IV

### (FLSA Collective Action)

41.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding

paragraphs.

42.     Plaintiffs bring this Count on behalf of themselves and a Collective Class defined

as:  "all individuals who are or have been employed by Bank of America, NA and/or Bank of

America Corp. by means of an non-salaried (hourly wage) ESA or similar agreement with a

third-party IT recruiting company (jointly, the 'FLSA Collective Class Members' or the 'FLSA

Collective Class'), at any time during the period beginning February 28, 2011 through the date

of the collective action notice herein."

13

43.    At all relevant times, Defendants were "employers" engaged in interstate "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants employed "employee[s]," including Plaintiffs and each of the members of the FLSA Collective Action Class.  During the FLSA Collective Class Period, Defendants engaged in interstate commerce with annual gross sales of at least $500,000.

44.    During the FLSA Collective Class Period, Defendants paid all of the FLSA Collective Class Members in the same manner and under the same standard employment procedures and practices as Plaintiff.

45.    During the FLSA Collective Class Period, the FLSA Collective Class Members have regularly worked in excess of forty hours per week.

46.    Defendants have been aware of the hours actually worked by the FLSA Collective Class Members but have failed to pay Plaintiffs and the FLSA Collective Class Members the full amount of wages to which they are entitled for this work time under the law.

47.    Plaintiffs have complained to Defendants about the failure to pay proper wages, but Defendants nevertheless continued in their failure to pay the FLSA Collective Class Members all of the wages due them under the law.

48.    Regardless of whether Plaintiffs and the FLSA Collective Class Members were or are entitled to an overtime premium for their work hours beyond 40 hours per week (due to any alleged status as a "computer professional"), they were and are entitled to, at a minimum, their standard hourly pay for all hours worked, as neither Plaintiffs nor the FLSA Collective Class Members were or are salaried employees. As a result, Defendants have failed to pay plaintiff and all other similarly situated employees earned wages in violation of 29 U.S.C. § 207.

49.    Defendants' failure to pay Plaintiffs and all other situated employees all earned

14

wages was willful within the meaning of 29 U.S.C. § 255(a).

50.     While their exact number is unknown to Plaintiffs at the present time, Plaintiffs believe that there are at least 40 similarly situated members of the FLSA Collective Class who are or have been employed by Defendants by means of a non-salaried (hourly wage) ESA or similar agreement with a third-party IT recruiting company during the FLSA Collective Class Period, most of whom it is believed would not likely file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.  This is particularly true because Defendants have misleadingly structured the employment relationship of each Collective Class member to resemble that of a "contractor" who is working for a separate, third party entity, when in truth and under law, Plaintiffs and Collective Class members were employees of Defendants.  Because of this obscured and misleading structure, Collective Class Members are unaware of their likely claims against Defendants, and the time period for asserting those claims should be equitably tolled.  In addition, a collective action is the most efficient mechanism for resolution of the claims of the FLSA Collective Class.

51.     In addition, a collective action under 29 U.S.C. § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy, because the wage losses (damages) suffered by individual members of the FLSA Collective Class may be relatively small, and the expense and burden of individual litigation would make it impossible for such persons individually to redress the wrongs done to them.  Further, because of the similarity of the FLSA Collective Class Members' claims, individual actions would present the risk of inconsistent adjudications subjecting Defendants to incompatible standards of conduct.

52.     This Count will involve common proof and common questions of law or fact affecting the rights of all of the FLSA Collective Class Members.  Among other things, the form

544606.1

of the standard IT recruiting agreement for the FLSA Collective Class Members does not vary in the material term of non-salaried, hourly pay.  In addition, Defendants' computer log-in and security systems will provide prima facie proof of the times FLSA Collective Class Members worked and, when compared to the applicable payroll records, will show that the FLSA Collective Class Members were not paid for all hours worked.

53.    Plaintiffs know of no difficulty that will be encountered in the management of this Count as a FLSA collective action.  Although Plaintiffs are unaware of the identities of all the members of the FLSA Collective Class, Defendants' records will reflect such information, which may be used to provide FLSA notice and consent to joinder to the FLSA Collective Class Members.

54.    Plaintiffs and all other similarly situated employees are therefore entitled to the relief requested below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, the Subclass and the FLSA Collective Class, request award and relief on the causes of action as follows:

A.    An order (i) declaring that Count IV herein is maintainable as a collective action pursuant to 29 U.S.C. § 216(b); (ii) directing Defendants to provide to Plaintiffs' counsel a list of all persons within the definition of the FLSA Collective Class, including their last known address and telephone number; (iii) authorizing the distribution to FLSA Collective Class Members of a notice and a consent to joinder; (iv) and directing such other and further proceedings to determine the wages lost and damages suffered by the FLSA Collective Class Members.

16

B.      As to Counts I-III, an order certifying a Class and a New Jersey Subclass, and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

C.      As to Counts I-III, a judgment against Defendants and in favor of Plaintiffs and the Class and Subclass respectively awarding damages, including liquidated damages, together with pre-judgment and post-judgment interest, costs of suit, and reasonable attorneys' fees.

D.      As to Count IV, a judgment against Defendants and in favor of Plaintiffs and each member of the FLSA Collective Class awarding damages, including liquidated damages, together with pre-judgment and post-judgment interest, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b) or as otherwise permitted by law.

E.      An equitable decree requiring an accounting for, and imposition of a constructive trust upon, all unpaid but earned wages and/or monies received by Defendants as a result of the unlawful and unjust conduct alleged herein;

F.      Such other and further relief as may be deemed equitable and just.

## JURY DEMAND

Plaintiffs, the Class, the Subclass and the FLSA Collective Class demand a trial by jury for all issues so triable.

Dated: October 19, 2015

**LITE DEPALMA GREENBERG, LLC**

/s/ *Bruce D. Greenberg*_____
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
bgreenberg@litedepalma.com

17

**DONOVAN AXLER, LLC**
Michael D. Donovan (*pro hac vice*)
1055 Westlakes Drive, Suite 155
Berwyn, PA 19312
(610) 647-6067
mdonovan@donovanaxler.com

**TIMBY HUNT, LLC**
Tracy Paul Hunt
33 W. Court St.
Doylestown, PA 18901
(215) 230-7626
tph@timbyhunt.com

*Attorneys for Plaintiffs*

544606.1

# EXHIBIT A

## CONSENT TO ACT AS PLAINTIFF

Pursuant to 29 U.S.C. §216(b), I consent to act as a plaintiff in a case against Bank of America, NA and Bank of America Corp. I do this both on my own behalf and on behalf of all persons similarly situated.

Dated: February 24, 2014

_____
(signature here)

Scott Federman
(print name)

# EXHIBIT B

## CONSENT TO ACT AS PLAINTIFF

Pursuant to 29 U.S.C. §216(b), I consent to act as a plaintiff in a case against Bank of America, NA and Bank of America Corp.  I do this both on my own behalf and on behalf of all persons similarly situated.

Dated:  September 25, 2015

_____
(signature here)

___James Leone_____
(print name)

# EXHIBIT C

## Good morning

8 messages

---

**Jim Leone** <jimleone@gmail.com>                                                   Mon, Jun 3, 2013 at 10:10 AM
To: Adrianne Paterson <apaterso@teksystems.com>

Good morning....

My new email is james.leone@ml.com
My phone number is 609.274.6856

:)

---

**Paterson, Adrianne** <apaterso@teksystems.com>                                     Mon, Jun 3, 2013 at 10:34 AM
To: Jim Leone <jimleone@gmail.com>

Thank you Jim I will add it in.


**From:** Jim Leone [mailto:jimleone@gmail.com]
**Sent:** Monday, June 03, 2013 10:10 AM
**To:** Paterson, Adrianne
**Subject:** Good morning

[Quoted text hidden]

---

This electronic mail (including any attachments) may contain information that is privileged, confidential, and/or otherwise protected from disclosure to anyone other than its intended recipient(s). Any dissemination or use of this electronic mail or its contents (including any attachments) by persons other than the intended recipient(s) is strictly prohibited. If you have received this message in error, please notify us immediately by reply e-mail so that we may correct our internal records. Please then delete the original message (including any attachments) in its entirety. Thank you.

---

**Jim Leone** <jimleone@gmail.com>                                                   Mon, Jun 3, 2013 at 10:52 AM

To: "Paterson, Adrianne" <apaterso@teksystems.com>

By the way..I moved this weekend.
I moved to 714 bacall square 08759..

Who else do I need to notify?

Also....

My computer was down this weekend and I couldnt submit my time.

I will ask if I'm allowed to access that web site from here and do it now.

Thank you,

jim

[Quoted text hidden]

---

Paterson, Adrianne <apaterso@teksystems.com>                          Mon, Jun 3, 2013 at 12:50 PM
To: Jim Leone <jimleone@gmail.com>

I am assuming same what city is that? I will send it over to my CSA she will take care of everything

**From:** Jim Leone [mailto:jimleone@gmail.com]
**Sent:** Monday, June 03, 2013 10:52 AM
**To:** Paterson, Adrianne
**Subject:** RE: Good morning

[Quoted text hidden]

This electronic mail (including any attachments) may contain information that is privileged, confidential, and/or otherwise protected from disclosure to anyone other than its intended recipient(s). Any dissemination or use of this electronic mail or its contents (including any attachments) by persons other than the intended recipient(s) is strictly

prohibited. If you have received this message in error, please notify us immediately by reply e-mail so that we may correct our internal records. Please then delete the original message (including any attachments) in its entirety. Thank you.

---

**Jim Leone** <jimleone@gmail.com>
To: "Paterson, Adrianne" <apaterso@teksystems.com>

Mon, Jun 3, 2013 at 1:38 PM

Manchester nj.. Same county

[Quoted text hidden]

---

**Jim Leone** <jimleone@gmail.com>
To: "Paterson, Adrianne" <apaterso@teksystems.com>

Mon, Jun 3, 2013 at 1:22 PM

Adrianne...

My time-sheet just came back as rejected. I asked Alex what happened and he said tht I can;t put more than 40 hrs. on my sheet. I wanted me to adjust and re-submit

I told him I worked 56 hours and he said that was fine, but that I couldn't put anything more than 40 in. 8hrs each day max. That it's understood and no one can put more in. he also said it could cause issues for him. So he would try to 'comp' me time here and there when I put extra hours in.

I thought being hourly that wasn't allowed??? I thought that was only ok with salaried employees?

[Quoted text hidden]

---

**Paterson, Adrianne** <apaterso@teksystems.com>
To: Jim Leone <jimleone@gmail.com>

Mon, Jun 3, 2013 at 1:54 PM

Unfortunately, that's how management is at Merrill. Work with him and I'm certain he will give you comp hours.

**From:** Jim Leone [mailto:jimleone@gmail.com]
**Sent:** Monday, June 03, 2013 10:10 AM

**To:** Paterson, Adrianne
**Subject:** Good morning

[Quoted text hidden]

---

This electronic mail (including any attachments) may contain information that is privileged, confidential, and/or otherwise protected from disclosure to anyone other than its intended recipient(s). Any dissemination or use of this electronic mail or its contents (including any attachments) by persons other than the intended recipient(s) is strictly prohibited. If you have received this message in error, please notify us immediately by reply e-mail so that we may correct our internal records. Please then delete the original message (including any attachments) in its entirety. Thank you.

---

**Jim Leone** <jimleone@gmail.com>                                                                 Mon, Jun 3, 2013 at 2:33 PM
To: "Paterson, Adrianne" <apaterso@teksystems.com>

understood. I guess I should just be happy to have a job. I was talking with a few of the other consultants here from other companies and they said the same thing. This guy Ajay said he's been here working on and off for 7 years and he wouldn't dare put over 40 hrs on his timesheet. And that the people on green cards know better and are instructed the same.. and no one dare say anything or they lose their work visa.

I think I will heed his warning and advice and just stick to being happy to have a job. LOL


Thank's again!

jim

[Quoted text hidden]