**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SCOTT FEDERMAN, on behalf of himself
and all others similarly situated,

                Plaintiff,

                v.

BANK OF AMERICA, N.A., et al.,

                Defendants.

Civil Action No. 14-441 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on two motions. Plaintiff Scott Federman ("Federman") moves for the conditional certification of a Fair Labor Standards Act collective action pursuant to 29 U.S.C. § 216(b). (ECF No. 32.) Additionally, Defendants Bank of America, N.A. and Bank of America Corp. (collectively, "BOA" or "Defendants") move to dismiss Count One of the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 40.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Federman's motion for conditional certification is denied and Defendants' motion to dismiss is granted.

**I.    Background**

    Plaintiffs Federman and James Leone's ("Leone") (collectively with Federman, "Plaintiffs") Second Amended Complaint, filed on October 19, 2015, and brought by the two named plaintiffs individually and on behalf of all others similarly situated, consists of four causes

of action against Defendants for: (1) breach of contract; (2) unpaid wages in violation of the New Jersey Wage and Hour Laws, N.J.S.A. 34:11-56; (3) unjust enrichment; and (4) violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201. (ECF No. 39.) As the motions sub judice relate only to the FLSA and breach of contract claims, the Court will discuss only the allegations and facts relevant to those claims.

### A.   Fair Labor Standards Act Collective Action[1]

In the Second Amended Complaint, Plaintiffs allege that "Defendants have engaged in a common scheme, plan, and conspiracy to deprive hourly employees of due and payable hourly wages" through "implementing a third-party recruitment and contract scheme in which employment recruiters for information technology ("IT") personnel . . . recruited and placed IT workers at various Bank of America IT facilities." (Second Am. Compl. ¶ 1, ECF No. 39.) Specifically, Plaintiffs allege that Defendants "refused to pay those workers for work over 40 hours per week, despite the fact that all or virtually all of the workers were regularly required to work many more than 40 hours per week." (*Id.*)

Federman asserts that he has been employed as a Technical Delivery Manager by both Mitchell Martin, Inc. ("MMI") and Defendants since May 2013 at Defendants' Pennington, New Jersey location. (*Id.* ¶¶ 9, 12 at 6[2].) Additionally, Federman alleges that since at least June 2015, Defendants have "failed to pay [him] for all the hours he has worked per week despite his repeated

---

[1] Plaintiff Federman relies on the facts as alleged in his Amended Complaint (ECF No. 9) to support his motion for conditional certification. Plaintiffs, however, subsequently filed a Second Amended Complaint, naming a second Plaintiff, Leone. As the Second Amended Complaint is now the operative pleading, the Court takes its recitation of the facts from that pleading.

[2] Plaintiffs' Second Amended Complaint contains two paragraphs labeled "11" and "12." Thus, the Court will also provide citation to the page number of the paragraph it is referring to.

requests for such pay[ment]." (*Id.* ¶ 9.) Leone asserts that he was employed by TEKsystems, Inc. ("TEKsystems") and Defendants from approximately May 2013 to April 2014 as a Technical Delivery Manager at Defendants' Pennington, New Jersey location. (*Id.* ¶¶ 10, 13.) Additionally, Leone alleges that Defendants "failed to pay [him] for all the hours he has worked per week despite his repeated requests for such pay[ment]." (*Id.* ¶ 10.) Plaintiffs allege that they worked more than forty hours a week as "required by the projects, systems, applications and installations" they were assigned to complete by Defendants. (*Id.* ¶ 14.) Additionally, Plaintiffs allege that "Defendants advised [them] that they would not be paid for any hours over 40 hours per week." (*Id.* ¶ 15.)

## B. Breach of Contract Class Claim

With regard to the breach of contract claim, Plaintiffs allege, in the Second Amended Complaint, that third party recruiters, such as Adecco, TEKsystems, Pontoon Solutions, Inc. ("Pontoon"), MMI, and others, recruited information technology ("IT") personnel and placed them at Defendants' facilities. (Second Am. Compl. ¶ 1.) Specifically, Plaintiffs allege that BOA contracted with Pontoon as its Master Services Provider. (*Id.* ¶ 11 at 4.) Pontoon then contracted with individual staffing firms, such as MMI and TEKsystems. (*Id.* ¶ 1, 11 at 4-5.) The individual staffing firms would then recruit individuals and enter into employee service agreements ("ESA"). (*Id.* ¶¶ 2, 11 at 6.)

Specifically, Plaintiffs allege that Federman "contracted with MMI" to work at a BOA facility (*id.* ¶ 12 at 6), and that Leone "contracted with TEKsystems" to work at the same BOA facility (*id.* ¶ 13). Plaintiffs allege that the ESAs' Term Schedules set forth a non-salaried, hourly rate of employment and promise that the "[e]mployee will be paid for hours worked and approved

3

by Client/Client Manager." (*Id.* ¶¶ 5-6.[3]) Plaintiffs allege that they regularly worked more than forty hours per week for Defendants, but were only paid for forty hours per week. (*Id.* ¶ 7.) Plaintiffs assert that BOA breached the ESAs, including their implied duty of good faith and fair dealing, by refusing to pay Plaintiffs their agreed to hourly pay and for all hours worked. (*Id.* ¶¶ 30-33.)

## II. Motion for Conditional Certification

Federman contends that Defendants "maintained a policy or practice that information technology ("IT") workers supplied by third party recruiters to work at BOA facilities in New Jersey would not be paid for hours worked in excess of 40 hours per week," and because of such, seeks to have his FLSA collective action conditionally certified and to have notice issued to the collective. (Pl.'s Moving Br. 1, ECF No. 32-1.) Federman requests that the Court conditionally certify the following collective:

> All individuals who are or have been employed by Bank of America, NA and/or Bank of America Corp. by means of an [sic] non-salaried (hourly wage) ESA or similar agreement with a third-party IT recruiting company (jointly, the "FLSA Collective Class members" or the "FLSA Collective Class"), at any time during the period beginning February 28, 2011[,] through the date of the collective action notice herein.

(Notice of Motion ¶ 1, ECF No. 32.)

### A. Legal Standard

"Section 16(b) of the FLSA . . . gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA. A suit brought on behalf of other employees is known as a 'collective action.'"

---

[3] The ESA's Term Schedule sets forth a rate of $60.00 per hour for Federman and $55.28 per hour for Leone. (Second Am. Compl. ¶¶ 5-6.)

4

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (quoting 29 U.S.C. § 216(b)).

A collective action allows individuals who are similarly situated to the named plaintiff to opt in to the collective action by filing a written notice of consent with the Court. *See* § 216(b)[4].

In *Symczyk*, the Third Circuit established a two-step approach to certifying a FLSA collective action:

> In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery....
>
> After discovery, and with the benefit of "a much thicker record than it had at the notice stage," a court following [the modest factual showing] approach then makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Id.* Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action.

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013).

At the first stage, a plaintiff must make a "modest factual showing" for conditional certification to be granted. *Id.* at 193. The Third Circuit has found this showing to require that "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* (quoting *Smith v. Sovereign Bancorp, Inc.*, No. 03-2420, 2003 WL

---

[4] "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

5

22701017, at *3 (E.D. Pa. Nov. 13, 2003)). Furthermore, the Third Circuit has approvingly cited the Second Circuit's decision in *Myers*: "The Second Circuit has described this initial step as 'determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist,' while at the second stage, the District Court determines 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536, n.4 (3d Cir. 2012) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

## B. Analysis

In the moving brief, Federman alleges that Defendants had a "scheme, plan, and conspiracy to deprive hourly employees of due and payable hourly wages, for at least the past six years."[5] (Pl.'s Moving Br. 5, ECF No. 32-1.) In support of the motion, Federman attaches declarations from Leone and himself, along with e-mail messages between each plaintiff and his supervisor at Bank of America and the third-party recruiters.

Specifically, in his declaration, Federman states that because of the job duties assigned to him, he "routinely worked in excess of 40 hours per week, but was not paid for these extra hours." (Pl.'s Moving Br., Ex. E ("Federman Decl."), ECF No. 32-1.) Additionally, Federman states that the first time he submitted a timesheet for more than forty hours it was approved. (*Id.*) "However, following that initial time, up until [he] filed this claim against Bank of America, each time [he]

---

[5] For the first time in his reply brief, Federman argues that "it is t[he] uniform, third-party M[aster] S[ervice] P[rovider] structure and practice that Plaintiffs allege renders all of the IT personnel in the proposed conditional class similarly situated and that results, necessarily, in the failure to pay these IT personnel for all hours worked." (Pl.'s Reply Br. 1-2, ECF No. 47.) Specifically, Federman now argues that the MSP structure conditioned any contractor payment on hiring manager approval after-the-fact. (*Id.*) This is a significant change from the arguments that Federman made in his moving brief. As this argument was raised for the first time on reply, the Court declines to consider it. *See Tigert v. Ranbaxy Pharm., Inc.*, No. 12-154, 2012 WL 6595806, at *5 (D.N.J. Dec. 18, 2012) (citing *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (declining to consider arguments raised in a reply brief); *Stern v. Halligan*, 158 F.3d 729, 731, n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief.").

6

submitted a timesheet with more than 40 hours worked in a week, it was rejected by [his] supervisor, John Ray." (*Id.*) Federman goes on to state that he "asked several of [his] co-workers who were also hourly consultants if this was normal and every one of them stated it was how it worked at Bank of America." (*Id.*) Additionally, Federman describes a co-worker who worked for Defendants for almost ten years who stated she worked more than forty hours a week but was never paid for the extra time. (*Id.*)

Three e-mail messages relating to Federman were also submitted in support of the motion. First, an e-mail message from John Ray to Federman states: "As far as overtime, you (like I) can only bill a 40hr work week even though we put in like 60hrs at times." (Pl.'s Moving Br., Ex. B, ECF No. 32-1.) A second e-mail message from Angel Lewin, from MMI, to Federman states: "As you know we can only bill for the 40hrs. . . ." (Pl.'s Moving Br., Ex. C, ECF No. 32-1.) Third, an internal MMI email from Mike Ruderman states: "his manager told him they don't pay for over 40 hours which is against the BOA policy. This has happened before with other managers." (Pl.'s Moving Br., Ex. D, ECF No. 32-1.)

Leone, in his declaration, also states that "[a]s a result of [his] job duties . . . [he] routinely worked in excess of 40 hours per week." (Pl.'s Moving Br., Ex. F ("Leone Decl."), ECF No. 32-1.) Additionally, Leone states that "early on, it was made very clear to [him] that [he] should never submit time for any hours worked over 40 per week." (*Id.*) Specifically, Leone states that his manager, Alex Gomez, and his contact at the third-party recruiter, Adrianne Paterson, confirmed in an e-mail message that the company does not allow timesheets to be submitted with over forty hours. (*Id.*) Leone also states that others from all different agencies and in varying departments "at the company confirmed this to [him] verbally as well." (*Id.*) One e-mail message was attached to the motion that related to Leone, from Adrianne Paterson, stating: "Unfortunately, that's how

management is at Merrill.[6] Work with him and I'm certain he will give you comp hours." (Pl.'s Moving Br., Ex. G, ECF No. 32-1.)

Based on these facts, Federman argues that he has made the requisite showing that collective class members were all victims of a policy or practice that violated the FLSA and are thus similarly situated. (Pl.'s Moving Br. 10-11.) Federman argues that the declarations and e-mail messages submitted to the Court confirm that Defendants had a "policy of refusing to pay Class members for any hours worked over 40 in a given week." (*Id.* at 10.)

In opposition, Defendants argue that Federman has not met his burden for conditional certification because he has not demonstrated that an unlawful nationwide policy exists or that there is any relevant factual nexus between Plaintiffs and any other information technology contractor. (Defs.' Opp'n Br. 21-37, ECF No. 42.) Primarily, Defendants argue that "Plaintiffs do not provide the Court with any supporting evidence beyond their own alleged individual circumstances" and then ask this Court to "extrapolate and speculate that all IT contractors nationwide must be similarly situated to them." (*Id.* at 1.)

The Court agrees with Defendants. "[W]hile the threshold for conditional certification is modest, at this stage [Federman] must, nevertheless, demonstrate that he is similarly situated to the other employees enumerated in the [c]omplaint and provide evidence beyond mere speculation of a 'factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees.'" *Reed v. Empire Auto Parts, Inc.*, No. 13-5220, 2015 WL 761894, at *5 (D.N.J. Feb. 23, 2015) (quoting *Symczyk*, 656 F.3d at 192). Federman has failed to meet this burden.

---

[6] In the Second Amended Complaint, Plaintiffs allege that BOA was once a "back-office facility" for Merrill Lynch & Co. (Second Am. Compl. ¶ 11 at 4.)

8

Taking the facts in the light most favorable to Federman, at most, they demonstrate that Defendants had a policy to appropriately compensate workers for overtime hours (*see* Pl.'s Moving Br., Ex. D), but that Plaintiffs' direct supervisors may not have followed that policy (*see* Pl.'s Moving Br., Ex. B; Federman Decl.; Leone Decl.). From these facts, Federman is asking this Court to speculate that because his rights may have been violated, Defendants had a conspiracy to deprive all hourly employees appropriate pay for work that exceeded forty hours per week. There is no evidence to support the existence of a policy other than Plaintiffs' own statements and the instructions given by their direct managers. Additionally, there is no evidence that the "other employees" Plaintiffs mention in their respective declarations are similarly situated, as hourly employees contracted by third parties to work for Defendants and not subject to any exemption under the FLSA. Instead, Plaintiffs ask this Court to speculate that other workers are similarly situated to themselves.

Courts in this Circuit, however, have routinely found that such speculation is not proper. *See, e.g., Wright v. Lehigh Valley Hosp.*, No. 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010) (Plaintiff's "argument that Defendants must have violated other nurses' rights because their uniform policies and procedures allegedly violated her rights is insufficient to satisfy the modest factual showing test."); *Rogers v. Ocean Cable Grp. Inc.*, No. 10-4198, 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011) ("Although each plaintiff submitted an affidavit stating [he or she] worked in excess of 40 hours in a workweek, what they are essentially asking the Court to do is to assume that because they worked in excess of 40 hours in a workweek that the other technicians must have as well."); *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, No. 11-04039, 2014 WL 294886, at *3 (D.N.J. Jan. 24, 2014) (denying conditional certification where the plaintiffs asserted that defendant regularly deducted thirty minute meal break regardless of whether such a break was

9

taken, and stating that "the alleged application of a uniform policy does not, without more, show that potential class members are similarly situated"); *Reed*, 2015 WL 761894, at *7 (denying conditional certification and holding the court would not draw "extremely attenuated inference[s]" where the plaintiff lacked sufficient knowledge of other employees and assumed facts rather than put forth appropriate evidence); *Kronick v. bebe Stores, Inc.*, No. 07-4514, 2008 WL 4546368, at *3 (D.N.J. Oct. 2, 2008) (denying conditional certification because "Plaintiffs do not make even a modest showing of evidence, beyond pure speculation, that [d]efendant's alleged policies were applicable to other employees. Plaintiffs assert generalized assumptions and effectively assume a similar situation for themselves and the prospective class."). In light of the above, conditional certification is inappropriate and Federman's motion is denied without prejudice.

## III. Partial Motion to Dismiss Plaintiff's Second Amended Complaint

Defendants seek dismissal of Count One, Plaintiffs' breach of contract claim, for failure to state a claim, arguing that the Second Amended Complaint does not contain allegations of any contractual relationship between Plaintiffs and Defendants—BOA is not a signatory to the ESA between Federman and MMI or the ESA between Leone and TEKsystems. Thus, because BOA is not a party to the ESAs that Plaintiffs entered into with the third-party recruiters, Defendants argue the Second Amended Complaint fails to state a plausible claim.

### A. Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United*

10

*States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## B. Analysis

Plaintiffs argue that Defendants' motion to dismiss the breach of contract claim should be dismissed for three reasons: (1) Defendants are equitably estopped from avoiding the ESAs because they directly benefited from them; (2) the third party recruiters, such as MMI and TEKsystems, acted as Defendants' agents; and (3) there is a valid and enforceable implied-in-fact and unilateral contract between Plaintiffs and Defendants. All of Plaintiffs' arguments fail, however, as the facts pled in the Second Amended Complaint are insufficient to support any of these theories.

First, "[u]nder the direct benefits theory of estoppel, a nonsignatory may be [bound to a contract] where the nonsignatory knowingly exploits the benefits of an agreement . . . and receives benefits flowing directly from the agreement." *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626, 631 (2013); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*

*Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001).[7] Here, Plaintiffs have not pled in the Second Amended Complaint that BOA had actual knowledge of the ESAs.

Second, "an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010); *see also Healthcare Servs. Grp., Inc. v. Royal Healthcare of Middlesex, LLC*, 276 F. Supp. 2d 255, 259 (D.N.J. 2003). "[I]n either case[,] it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996); *see also Healthcare Servs. Grp., Inc.*, 276 F. Supp. 2d at 259-60. "Apparent authority arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003) (internal quotation marks omitted); *see also Healthcare Servs. Grp., Inc.*, 276 F. Supp. 2d at 260. "Apparent authority for an agency relationship depends upon reasonable reliance at the time of a contract." *Dinaco, Inc.*, 346 F.3d at 70; *see also Healthcare Servs. Grp., Inc.*, 276 F. Supp. 2d at 260. Here, in the Second Amended Complaint, Plaintiffs fail to allege sufficient facts to demonstrate that: (1) BOA gave expressed or implied actual authority

---

[7] Defendants assert that New York law applies, without appropriate analysis (Defs.' Moving Br. 5, n.5, ECF No. 40-4), and Plaintiffs assert that either New Jersey or New York law might apply to the breach of contract claim (Pls.' Opp'n Br. 4, n.2, ECF No. 43). Neither, however, conducts an appropriate choice of law analysis or disputes that the laws of New Jersey and New York are different for the purposes of this decision. Since Plaintiffs did not plead actual knowledge, the Court does not need to reach the choice of law issue.

12

to MMI or TEKsystems; (2) there was reasonable reliance at the time of contracting; or (3) any words or actions of BOA created an agency relationship with MMI or TEKsystems.

Lastly, with respect to Plaintiffs' theory of an implied-in-fact or unilateral contract, Plaintiffs argue that such contract was created between themselves and BOA. In the Second Amended Complaint, however, Plaintiffs only allege breach of the ESAs. A party, however, may not amend its pleadings through its brief. *See Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 663 (D.N.J. 2010).

Accordingly, based on the limited factual allegations set forth in the Second Amended Complaint, Defendants' motion to dismiss is granted.[8]

### IV. Conclusion

For the reasons set forth above, Federman's motion for conditional certification is denied and Defendants' motion to dismiss is granted. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** May 31, 2016

---

[8] This dismissal is without prejudice. However, the Court will not grant leave to amend as Plaintiffs have not requested such relief, nor asserted sufficient facts in its briefing for the Court to determine amendment would not be futile. Additionally, the deadline set in this case for motions to amend the pleadings passed on October 23, 2015. (ECF No. 25.) Accordingly, to the extent Plaintiffs believe they have sufficient facts to replead their breach of contract claim, they must seek appropriate relief from the magistrate judge to amend their pleadings.

13